**IN THE UNITED STATES
DISTRICT COURT
FOR THE SOUTHERN DISTRICT
OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ORGANIC INDUSTRIES PVT. LTD., | § § § § | Civil Action No. _____ |
| **Plaintiff,** | § § § | |
| v. | § | |
| Reflow Supply Chain Solutions LLC d/b/a Pyrock Chemical, and Matthew Murdoch. | § § § § | |
| **Defendants.** | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Organic Industries Pvt. Ltd. ("Organic" or "Plaintiff") files this Original Complaint against Defendants Reflow Supply Chain Solutions LLC d/b/a PyRock Chemical ("Reflow" or "PyRock") and Matthew Murdoch ("Murdoch," and together with Reflow, "Defendants"), and alleges as follows:

## I.  NATURE OF THE ACTION

1. This is a commercial, contract, and trademark dispute arising from Defendants' failure to pay for calcium hypochlorite products supplied by Organic under the **AQUA-ORG** and **AQUA-ORG PLUS** brands, and from Defendants' later attempt to capture and control those brands in the United States while blocking Organic from selling to other U.S. customers.

2. Beginning in or about 2021, Organic manufactured and supplied **AQUA-ORG PLUS** calcium hypochlorite products to PyRock for distribution and resale in the United States.

PyRock repeatedly ordered, received, retained, repackaged, resold, and commercialized Organic's goods in the United States, including in Texas.

3. By June 2024, PyRock owed Organic **$2,777,194.99** for goods supplied, delivered, accepted, retained, and commercialized. In June 2024, PyRock requested extraordinary concessions and represented that, if Organic issued price-reduction and repacking credits, PyRock would pay **$1,000,000** by June 14, 2024 and the remaining balance by July 31, 2024.

4. In reliance on Defendants' representations and promises, Organic issued two conditional credits: (a) a price-reduction credit of **$1,102,054.04**; and (b) a repacking-materials credit of **$26,235.00**. PyRock paid only **$1,000,000** on or about June 15, 2024 and failed to pay the remaining balance.

5. Because the credits were conditional and because PyRock materially breached the payment agreement that induced them, Organic rescinds and withdraws those credits for failure of consideration and material breach. After application of PyRock's single **$1,000,000** payment, Organic seeks at least **$1,777,194.99** in principal damages, plus prejudgment interest, post-judgment interest, costs, attorneys' fees, and all other relief allowed by law.

6. This action also concerns Defendants' unauthorized and fraudulent registration, use, and enforcement of Organic's **AQUA-ORG** and **AQUA-ORG PLUS** marks. Organic obtained an EPA registration for **AQUA ORG PLUS** and had use in commerce of the product in 2021, which precedes Defendants' USPTO filings with the sworn use date of February 1, 2022. Organic also manufactured the branded product, supplied the product to PyRock, and provided the product labels, packaging, and brand identity. PyRock nevertheless obtained federal trademark registrations for **AQUA-ORG PLUS** and **AQUA-ORG** in its

own name and used those registrations to threaten third parties, including Samca International Inc., and to interfere with Organic's U.S. market access.

7.  Organic seeks damages and equitable relief for breach of contract, suit on account/action for the price, rescission of conditional credits, unjust enrichment/quantum meruit, conversion, fraud/fraudulent inducement, trademark cancellation and declaratory relief, false designation of origin/unfair competition under the Lanham Act, common-law unfair competition, tortious interference with prospective business relations, and related statutory and equitable remedies.

## II. PARTIES

8.  Plaintiff Organic Industries Pvt. Ltd. is a private limited company organized under the laws of India, with its corporate office at 6th Floor, Delta, Technology Street, Hiranandani Gardens, Powai, Mumbai, Maharashtra, India 400076, and manufacturing operations in Gujarat, India. Organic manufactures calcium hypochlorite and related water-treatment chemical products, including products sold under the **AQUA-ORG** and **AQUA-ORG PLUS** names.

9.  Defendant **Reflow Supply Chain Solutions LLC** is a Texas limited liability company that does business as **PyRock Chemical**. On information and belief, Reflow's principal place of business and/or relevant operating facility is located at or near **279 Oil Field Road, Bellville, Texas 77418**, and PyRock has conducted chemical distribution, importation, repackaging, warehousing, marketing, and sales activities in Texas, including within or directed to this District.

10. Defendant **Matthew Murdoch** is an individual residing in Texas. On information and belief, Murdoch is the CEO, managing partner, principal, owner, officer, or controlling

person of PyRock/Reflow and personally participated in, directed, authorized, and benefitted from the conduct alleged in this Complaint, including the June 2024 payment commitments, communications regarding credits and inventory, enforcement of the challenged trademarks, and communications intended to block Organic's alternative U.S. distribution channels.

11. Whenever this Complaint refers to "Defendants," it alleges that each Defendant acted individually, directly, through agents, and/or in concert with the other Defendant, and that each Defendant is responsible for the acts alleged according to the proof at trial.

## IV. JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) because this action is between a citizen or subject of a foreign state and citizens of Texas, and the amount in controversy exceeds **$75,000**, exclusive of interest and costs.

13. This Court also has federal-question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because this action includes claims arising under the Lanham Act, including 15 U.S.C. §§ 1119 and 1125(a), as applicable, and claims concerning the validity, ownership, cancellation, use, and enforcement of federally registered trademarks.

14. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's state-law claims because they form part of the same case or controversy as Plaintiff's federal claims and arise from a common nucleus of operative fact.

15. This Court has personal jurisdiction over Defendants because Reflow is a Texas limited liability company, Murdoch resides in Texas, Defendants conduct business in Texas, Defendants accepted and commercialized goods in Texas, Defendants communicated payment commitments and trademark-related demands from Texas, Defendants

maintained inventory and/or warehouse operations in Texas, and the claims arise from or relate to Defendants' Texas contacts.

16. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because Defendants reside in Texas for venue purposes, a substantial part of the events or omissions giving rise to the claims occurred in this District and/or in Texas, and Defendants maintained relevant operations, inventory, warehouse activities, distribution activities, and communications connected to this District.

17. Venue is also proper under 28 U.S.C. § 1391(c) and (d) because Plaintiff is a foreign entity and Defendants are subject to personal jurisdiction in this District.

## V. FACTUAL STATEMENT

### A. <u>Organic's Business, Product, and Regulatory Registration</u>

18. Organic manufactures calcium hypochlorite products used in pool, spa, industrial, institutional, wastewater, and related water-treatment applications.

19. Organic developed, manufactured, labeled, and supplied products using the names **AQUA-ORG** and **AQUA-ORG PLUS**. Organic's product packaging and label materials identified **Organic Industries Pvt. Ltd.** as the manufacturer and used the **AQUA-ORG PLUS** designation for "Superior Quality Calcium Hypochlorite Granules."

20. On or about **July 26, 2021**, the United States Environmental Protection Agency issued EPA Registration No. **95968-2** for the pesticide product **AQUA ORG PLUS**. The EPA registration notice identifies **Organic Industries PVT. LTD.** as the registrant/manufacturer through its regulatory agent and identifies the product name as **AQUA ORG PLUS**.

21. The EPA-approved labeling states that **AQUA-ORG PLUS** is manufactured by **Organic Industries Pvt. Ltd.**, lists EPA Establishment No. **95968-IND-001**, and includes

instructions and warnings applicable to the product. The label further states that repackagers or formulators using **AQUA-ORG PLUS** are responsible for obtaining EPA registration of their products.

22. Organic's EPA registration and label materials predate Defendants' later USPTO filings for **AQUA-ORG PLUS** and **AQUA-ORG**.

**B.  The Parties' Course of Dealing and PyRock's Acceptance of Goods**

23. Organic began doing business with PyRock in or about **August 2021**, after Murdoch represented that PyRock operated a U.S. chemical distribution business and was interested in selling Organic's calcium hypochlorite product manufactured under Organic's **AQUA-ORG PLUS** brand.

24. On or about **August 24, 2021**, PyRock issued Purchase Order No. **PO-0369**. On or about **September 8, 2021**, Organic issued Proforma Invoice No. **OIL/CLH/XP/67/21-22** and shipped an initial container of product to PyRock.

25. From approximately **September 2021 through June 2024**, Organic continuously supplied calcium hypochlorite products, including **AQUA-ORG PLUS**, to PyRock.

26. PyRock accepted delivery of the products, retained them, stored them, repackaged or attempted to repackage some of them, sold or attempted to sell them in the United States, and otherwise exercised dominion over them.

27. PyRock did not timely reject the goods. Instead, PyRock used, retained, resold, and commercialized the goods and sought credits, discounts, and payment schedules to address inventory pricing and packaging issues.

28. PyRock's conduct showed agreement to purchase, accept, and pay for the goods under the parties' purchase orders, invoices, emails, course of dealing, and commercial conduct.

C. **Outstanding Balance and June 2024 Conditional Credits**

29. By **June 2024**, PyRock's outstanding balance to Organic had grown to **$2,777,194.99**.

30. Around the same period, PyRock represented that it had inventory on hand in Bellville, Texas that it wanted to liquidate quickly and that a price reduction would enable PyRock to sell through the material and obtain new product shipments.

31. On or about **June 3, 2024**, Murdoch emailed Organic regarding a proposed revised price of **$1,900 per metric ton** for the on-hand Bellville, Texas inventory. Murdoch wrote that PyRock needed: (1) a credit note for the difference in prices; (2) a two-payment schedule of **$1,000,000 on June 14, 2024** and the remaining balance on **July 31, 2024**; and (3) a credit note for repacking all 25 kg pails, with PyRock to pay labor and Organic to help with the cost of pails.

32. On or about **June 3, 2024**, Murdoch also told Organic that PyRock's sales team wanted immediate approval so they could begin selling at the new price and liquidate the inventory.

33. On or about **June 3, 2024**, Organic, through Anand Shetty, responded to the plan and ultimately approved issuance of the credits, despite describing the concession as an "unwilling burden" caused by PyRock's conduct and nonpayment.

34. Organic issued a credit note dated **June 3, 2024** in the amount of **$1,102,054.04**, described as a price reduction for inventory on hand. The credit note included a **$510 per metric ton** reduction for **41,607** 100-pound pails and a **$660 per metric ton** reduction for **9,235** 55-pound pails.

35. Organic issued a second credit note dated **June 4, 2024** in the amount of **$26,235.00** for materials cost relating to repacking **3,000** 55-pound/25 kg pails into **3,300** 50-pound pails.

36. The total amount of conditional credits was **$1,128,289.04**.

37. After application of those conditional credits, the net receivable would have been **$1,648,905.95**, to be paid through PyRock's promised **$1,000,000** payment by June 14, 2024 and remaining **$648,905.95** balance by July 31, 2024.

38. The credits were not unconditional gifts. They were granted in reliance on Defendants' express payment commitments, their representations regarding rapid liquidation at reduced prices, and their represented intent to continue the business relationship and obtain new product.

**D. PyRock's Partial Payment and Failure to Pay the July 31, 2024 Balance**

39. On or about **June 14–15, 2024**, PyRock initiated and/or confirmed a wire payment of **$1,000,000** to Organic.

40. After the **$1,000,000** payment, PyRock remained obligated to pay the remaining balance by **July 31, 2024**.

41. On or about **July 25, 2024**, Organic's CFO Amit Naik emailed Defendants stating: "*As promised by you, you will remit the balance amount of $648,889 on 31/7/24. Hope you have arranged the funds, and we will receive the amount.*"

42. On or about **July 30, 2024**, Organic again asked PyRock to confirm that it would remit the amount on **July 31, 2024**.

43. On or about **July 31, 2024**, Organic wrote: "*Hope to receive the balance amount of $648,889 today.*"

44. PyRock did not remit the remaining amount on July 31, 2024.

45. On or about **August 1, 2024**, Organic again demanded payment, writing: "*As promised by you, kindly remit the balance amount of $648,889 today.*" Organic also stated that it had

informed banks and customs authorities that it would receive the balance by July 31, 2024 based on Defendants' promise.

46. On or about **August 1–2, 2024**, Murdoch responded that PyRock was dealing with an emergency involving 25 kg pails, off-gassing, hardening, potential disposal costs, and warehouse damage. Murdoch stated, however, "*We will remit, but right now, this is an emergency.*"

47. Organic attempted to accommodate the claimed packaging and product issue, including by suggesting possible alternative uses or outlets and stating that PyRock could retain the equivalent amount for the affected containers and remit the balance.

48. On or about **August 16, 2024**, Organic reiterated: "As already indicated, please retain the amount for 5 containers and remit the balance amount."

49. On or about **October 18, 2024**, Organic again demanded payment of **$648,889**, stating that Organic had suffered a major fire and urgently needed funds.

50. Defendants did not pay the remaining balance.

51. Defendants' nonpayment defeated the purpose and consideration for the June 2024 credits and constituted a material breach of the payment arrangement and the parties' underlying purchase transactions.

## E. Product Handling, Repackaging, and Regulatory Concerns

52. Defendants reported that some 25 kg pails had lid failures, hardening, off-gassing, chlorine gas release, glove damage, and possible disposal issues.

53. Organic provided assistance and proposed solutions, including shipment of replacement lids and suggestions for alternative buyers or uses. Organic also conditionally credited PyRock for repacking materials.

54. The EPA-approved label for **AQUA-ORG PLUS** warned that the product is a strong oxidizing agent, that contamination with moisture, organic matter, or other chemicals can generate heat and chlorine gas and possibly cause fire or explosion, and that repackagers or formulators using **AQUA-ORG PLUS** are responsible for obtaining EPA registration for their products.

55. On information and belief, Defendants repackaged or attempted to repackage Organic's product into different packaging and smaller consumer units, and sold or offered products through online marketplaces or other channels.

56. Organic does not know the full extent of Defendants' repackaging, substitutions, regulatory compliance, sales channels, revenues, or profits because Defendants have not provided a full accounting.

57. Organic seeks discovery regarding Defendants' receipt, storage, repackaging, handling, substitution, marketing, sale, and regulatory compliance concerning Organic's products and the **AQUA-ORG** and **AQUA-ORG PLUS** brands.

**F. Defendants' USPTO Trademark Filings and Brand Capture**

58. Organic owned and used the **AQUA-ORG** and **AQUA-ORG PLUS** designations, product identity, labels, and packaging before Defendants' USPTO registrations.

59. Organic's **AQUA ORG PLUS** EPA registration issued on **July 26, 2021**, before Defendants' USPTO registration for **AQUA-ORG PLUS**, before Defendants' USPTO registration for **AQUA-ORG**, and before the claimed first-use dates in Defendants' registrations.

60. Defendants were customers and distributors, not owners of Organic's brand. Organic did not authorize Defendants to register **AQUA-ORG**, **AQUA-ORG PLUS**, or confusingly similar marks in Defendants' own name.

61. Reflow obtained U.S. Trademark Registration No. **7,148,442** for **AQUA-ORG PLUS**, registered on **August 29, 2023**, for "shock treatment chemicals for use in swimming pools and spas," claiming first use and first use in commerce on **February 1, 2022**.

62. Reflow later obtained U.S. Trademark Registration No. **7,730,323** for **AQUA-ORG**, registered on **March 18, 2025**, covering goods in International Classes 001 and 005, including chemicals for industrial purposes, shock treatment chemicals, algaecides, sanitizing preparations, and all-purpose sanitizing preparations.

63. On information and belief, Defendants' registrations were procured without Organic's authorization and while Defendants were acting as Organic's customer/distributor and had knowledge of Organic's prior product, label, regulatory registration, brand, and supply relationship.

64. On or about **March 10, 2026**, Organic filed a TTAB petition to cancel Reflow's **AQUA-ORG PLUS** Registration No. **7,148,442**, asserting fraud on the USPTO under Trademark Act § 14(3), 15 U.S.C. § 1064(3), and relying on **AQUA-ORG PLUS** use dating to at least May 29, 2012 for relevant goods.

65. On or about **March 13, 2026**, Organic filed a TTAB petition to cancel Reflow's **AQUA-ORG** Registration No. **7,730,323**, asserting fraud on the USPTO under Trademark Act § 14(3), 15 U.S.C. § 1064(3), and relying on **AQUA-ORG** rights.

66. The TTAB proceedings do not provide full relief for the claims asserted here, including contract damages, tort damages, Lanham Act damages, accounting, injunctive relief, attorneys' fees, and complete equitable remedies.

### G. Defendants' Threats to Samca and Interference with Organic's U.S. Market

67. PyRock was not Organic's exclusive distributor. Organic did not grant PyRock an exclusive U.S. distributorship or the right to prevent Organic from supplying other customers.

68. Organic explored a potential U.S. relationship with **Samca International Inc.**

69. On or about **August 12, 2025**, PyRock sent a cease-and-desist letter to Samca asserting that Reflow/PyRock owned the federally registered **AQUA-ORG PLUS®** mark and demanding that Samca cease using **AQUA-ORG PLUS** and stop importing, distributing, selling, or transferring inventory bearing the mark.

70. PyRock's letter identified an import record for chemicals labeled "aqua-org plus (calcium hypochlorite granules)," Bill of Lading No. **sifksmum132318**, importer **Samca International Inc.**, supplier **Organic Industries Private Limited**, Container ID **HLBU9984251**, quantity **285 packages**, weight **13,566 kg**, port of unloading **Savannah, Georgia**, and U.S. arrival date **January 31, 2025**.

71. PyRock's letter threatened Samca with Lanham Act liability, impoundment, damages, disgorgement, attorneys' fees, and notification to U.S. Customs and Border Protection.

72. On information and belief, after receiving PyRock's threat, Samca ceased doing business with Organic.

73. Defendants had no contractual exclusivity, license, ownership right, or lawful basis to prevent Organic from selling its own product to Samca or other U.S. customers.

74. Defendants' conduct blocked or attempted to block Organic's access to the U.S. market while Defendants continued withholding payment for goods Organic had already supplied.

## H. Demand Letter and Failure to Cure

75. On or about **January 6, 2026**, Organic's counsel sent a demand letter to PyRock, Murdoch, and their counsel.

76. The demand letter rescinded the June 2024 credits, demanded payment, explained the factual basis for Organic's claims, sought reconciliation and accounting, and provided Defendants an opportunity to resolve the dispute before litigation.

77. Defendants did not pay the demanded amount or provide an adequate accounting.

78. Organic has satisfied or performed all conditions precedent to recovery, or such conditions have been waived, excused, repudiated, or prevented by Defendants.

## VI. TIMELINE OF MATERIAL EVENTS

79. The following timeline summarizes key events alleged in this Complaint:

**May 29, 2012** — Organic asserts priority and pleaded use of **AQUA-ORG** and/or **AQUA-ORG PLUS** for relevant water-treatment chemical goods, as reflected in Organic's TTAB cancellation filings.

**July 26, 2021** — EPA issues Registration No. **95968-2** for **AQUA ORG PLUS**, identifying Organic as registrant/manufacturer through its regulatory agent.

**August 24, 2021** — PyRock issues Purchase Order No. **PO-0369** to Organic.

**September 8, 2021** — Organic issues Proforma Invoice No. **OIL/CLH/XP/67/21-22** and ships initial product to PyRock.

**September 2021–June 2024** — Organic supplies **AQUA-ORG PLUS** product to PyRock for U.S. distribution; PyRock accepts, retains, stores, resells, repackages, or otherwise commercializes the goods.

**April 5, 2022** — Reflow files an application that later matures into U.S. Trademark Registration No. **7,148,442** for **AQUA-ORG PLUS**.

**August 29, 2023** — Reflow obtains U.S. Trademark Registration No. **7,148,442** for **AQUA-ORG PLUS**.

**June 3, 2024** — Murdoch emails Organic requesting credits and proposing a two-payment schedule: **$1,000,000** on June 14, 2024 and the remaining balance on July 31, 2024. Organic's outstanding balance is **$2,777,194.99**.

**June 3, 2024** — Organic issues a conditional price-reduction credit note of **$1,102,054.04**.

**June 4, 2024** — Organic issues a conditional repacking-materials credit note of **$26,235.00**.

**June 14–15, 2024** — PyRock initiates or confirms a **$1,000,000** wire payment to Organic.

**July 25, 2024** — Organic reminds PyRock of its promise to pay the remaining **$648,889** by July 31, 2024.

**July 30, 2024** — Organic again requests confirmation that PyRock will pay on July 31, 2024.

**July 31, 2024** — Payment deadline passes without full payment.

**August 1–2, 2024** — Organic demands payment; Murdoch reports product/pail issues and states PyRock "will remit," but does not pay.

**August 16, 2024** — Organic tells PyRock to retain the amount for five containers and remit the balance.

**October 18, 2024** — Organic again demands payment of the outstanding balance and explains its urgent need for funds.

**January 31, 2025** — Import record referenced by PyRock identifies a shipment supplied by Organic to Samca under Bill of Lading No. **sifksmum132318**.

**March 18, 2025** — Reflow obtains U.S. Trademark Registration No. **7,730,323** for **AQUA-ORG**.

**August 12, 2025** — PyRock sends a cease-and-desist letter to Samca asserting **AQUA-ORG PLUS®** and demanding that Samca cease importing, distributing, and selling goods bearing the mark.

**January 6, 2026** — Organic's counsel sends a demand letter to Defendants rescinding the credits, demanding payment, and requesting reconciliation.

**March 10, 2026** — Organic files a TTAB petition to cancel Reflow's **AQUA-ORG PLUS** Registration No. **7,148,442**.

**March 13, 2026** — Organic files a TTAB petition to cancel Reflow's **AQUA-ORG** Registration No. **7,730,323**.

## VII. RELEVANT LEGAL FRAMEWORK

80. Texas law governs Plaintiff's contract, UCC, account, restitution, fraud, conversion, and tortious-interference claims, except to the extent federal law governs Plaintiff's Lanham Act and federal trademark claims.

81. Under Tex. Bus. & Com. Code § 2.204, a contract for the sale of goods may be made "in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."

82. Under Tex. Bus. & Com. Code § 2.606, a buyer accepts goods when, among other things, the buyer signifies that the goods are conforming or that it will retain them despite nonconformity, fails to make an effective rejection after a reasonable opportunity to inspect, or acts inconsistently with the seller's ownership.

83. Under Tex. Bus. & Com. Code § 2.607, the buyer must pay at the contract rate for goods accepted.

84. Under Tex. Bus. & Com. Code § 2.709, when a buyer fails to pay the price as it becomes due, the seller may recover the price of goods accepted, together with incidental damages in a proper case.

85. Texas law recognizes implied contract formation through acceptance of goods with knowledge of price terms. In *Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enterprises,* 625 S.W.2d 295 (Tex. 1981), the Supreme Court of Texas recognized that an implied agreement may arise from a buyer's acceptance of goods and course of dealing.

86. Texas courts recognize that a seller may recover the price for accepted goods under the UCC. In *Prosper Florida, Inc. v. Spicy World of USA, Inc.,* 649 S.W.3d 661 (Tex. App. 2022), the court cited §§ 2.607 and 2.709 and held that a buyer must pay at the contract rate for goods accepted.

87. Texas courts recognize acceptance through resale or commercialization. In *Bacchus Industries v. Frontier Mechanical,* 36 S.W.3d 579 (Tex. App. 2000), the court applied § 2.709 to goods accepted and commercialized by the buyer.

88. Texas law recognizes quantum meruit where goods or services are furnished at the defendant's instance and knowingly accepted. See *Cunningham v. R.W. McPherson & Associates, Inc.*, 392 S.W.2d 145 (Tex. Ct. App. 1965).

89. Texas law recognizes conversion/trover where delivery and payment are concurrent acts and a buyer receives goods but refuses to pay. See *Kroll v. Collins*, 340 S.W.2d 838 (Tex. Ct. App. 1960).

90. Texas law protects prospective business relations from tortious interference when the defendant's conduct is independently tortious or unlawful. See *Wal-Mart Stores Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001), and *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909 (Tex. 2014).

91. Under 15 U.S.C. § 1125(a), a person who uses a false designation of origin, false or misleading description of fact, or false or misleading representation of fact in commerce in a manner likely to cause confusion or deceive as to affiliation, connection, association, origin, sponsorship, or approval may be liable to a person damaged by such conduct.

92. Under 15 U.S.C. § 1119, in an action involving a registered mark, a district court may determine the right to registration and order cancellation of registrations. The Fifth Circuit recognized this authority in *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527 (5th Cir. 2015).

93. Under Trademark Act § 14(3), 15 U.S.C. § 1064(3), a registration may be cancelled if it was obtained fraudulently. Fraud in procuring a trademark registration occurs when an applicant knowingly makes a false, material representation with intent to deceive the USPTO. See *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009).

94. Under Tex. Civ. Prac. & Rem. Code § 16.004, Texas provides a four-year limitations period for claims including debt, fraud, and breach of fiduciary duty; Texas contract claims are generally subject to a four-year limitations period. Texas trademark and unfair-competition claims are likewise commonly evaluated using a four-year framework. See *Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734 (Tex. App. 2012).

95. Under Tex. Civ. Prac. & Rem. Code § 38.001, a prevailing party may recover reasonable attorneys' fees on a valid claim for an oral or written contract, subject to proof and applicable limitations.

## VIII. CAUSES OF ACTION

### Count 1 — Breach of Contract / Action for the Price Under Texas UCC

96. Plaintiff incorporates by reference all preceding paragraphs.

97. Organic and PyRock entered into enforceable contracts for the sale of goods through purchase orders, invoices, proforma invoices, confirmations, emails, acceptance of goods, course of performance, course of dealing, and commercial conduct.

98. Even if any transaction-specific writing is disputed, contracts were formed under Tex. Bus. & Com. Code § 2.204 because the parties' conduct recognized the existence of contracts for sale.

99. PyRock accepted the goods under Tex. Bus. & Com. Code § 2.606 by receiving, retaining, storing, reselling, repackaging, attempting to repackage, commercializing, and otherwise exercising dominion over them.

100. Under Tex. Bus. & Com. Code § 2.607, PyRock was required to pay at the contract rate for goods accepted.

101. Under Tex. Bus. & Com. Code § 2.709, Organic is entitled to recover the price of goods accepted and not paid for.

102. Organic performed or tendered performance by manufacturing, supplying, shipping, and delivering the goods.

103. PyRock breached by failing to pay the contract price and by failing to comply with the June 2024 payment schedule.

104. PyRock's breach caused Organic damages of at least **$1,777,194.99** in principal after rescission of the conditional credits and application of the **$1,000,000** payment, plus interest, costs, attorneys' fees, and incidental and consequential damages recoverable by law.

105. Organic seeks judgment for the contract price, prejudgment interest, post-judgment interest, attorneys' fees, costs, and all other recoverable damages and relief.

### **Count 2 — Suit on Account / Account Stated**

106. Plaintiff incorporates by reference all preceding paragraphs.

107. Organic sold and delivered merchandise to PyRock in the regular course of business. The charges were just and true, were due, and remained unpaid after all lawful offsets, payments, and credits are applied or rescinded.

108. PyRock received invoices, account summaries, credit communications, and payment demands and failed to timely and specifically dispute the debt in a manner that would defeat liability.

109. The parties' communications and course of dealing establish an account stated and/or suit on account for amounts due for goods sold and delivered.

110. Organic seeks judgment for the unpaid account balance, including the restored principal balance of at least **$1,777,194.99**, prejudgment interest, post-judgment interest, attorneys' fees, and costs.

**Count 3 — Rescission and Withdrawal of Conditional Credits / Failure of Consideration**

111. Plaintiff incorporates by reference all preceding paragraphs.

112. Organic issued the **$1,102,054.04** price-reduction credit and the **$26,235.00** repacking-materials credit solely in reliance on Defendants' promises and representations that PyRock would pay **$1,000,000** by June 14, 2024 and the remaining balance by July 31, 2024, liquidate inventory at the reduced price, and continue the parties' business relationship.

113. PyRock accepted the benefits of the credits, paid only **$1,000,000**, failed to pay the July 31, 2024 balance, and failed to perform the payment obligations that induced the credits.

114. Defendants' material breach and failure of consideration entitle Organic to rescind and withdraw the credits.

115. Organic has elected to rescind the credits, restore the pre-credit balance, apply the **$1,000,000** payment, and seek the resulting principal balance of at least **$1,777,194.99**.

116. Organic seeks a declaration and judgment that the June 2024 credits are rescinded, withdrawn, and unenforceable because Defendants failed to perform the conditions and consideration on which the credits were based.

**Count 4 — Quantum Meruit / Unjust Enrichment**

117. Plaintiff incorporates by reference all preceding paragraphs.

118. In the alternative to its contract claims, Organic supplied valuable goods and related benefits to PyRock.

119. PyRock knowingly accepted, retained, used, resold, repackaged, and commercialized those goods and benefits.

120. PyRock knew or reasonably should have known that Organic expected payment.

121. Defendants would be unjustly enriched if allowed to retain the benefits of Organic's goods, price concessions, brand goodwill, market access, and product supply without paying the reasonable value of those benefits.

122. Organic seeks restitution, disgorgement, reasonable value of goods and benefits conferred, prejudgment interest, post-judgment interest, costs, and other equitable relief.

### Count 5 — Conversion / Trover

123. Plaintiff incorporates by reference all preceding paragraphs.

124. Organic owned or had superior possessory rights in the goods and/or proceeds from the goods until PyRock paid for them.

125. Delivery and payment were intended to be concurrent or commercially linked obligations. PyRock received and retained the goods while refusing to pay the amounts due.

126. PyRock exercised unauthorized dominion and control over Organic's goods, proceeds, and/or property rights by retaining, repackaging, selling, or commercializing goods without paying for them.

127. Under Texas law, when delivery and payment are concurrent acts, a buyer who receives goods and refuses to pay may obtain wrongful possession and be liable in trover. See *Kroll v. Collins,* 340 S.W.2d 838 (Tex. Ct. App. 1960).

128. Organic seeks damages for conversion, including the value of goods and proceeds wrongfully retained, prejudgment interest, post-judgment interest, exemplary damages where allowed, costs, and all other appropriate relief.

## Count 6 — Fraud / Fraudulent Inducement

129. Plaintiff incorporates by reference all preceding paragraphs.

130. Defendants, through Murdoch and others, represented that if Organic issued the June 2024 credits, PyRock would pay **$1,000,000** by June 14, 2024 and the remaining balance by July 31, 2024, liquidate inventory at reduced prices, and continue the business relationship.

131. Defendants also represented or implied that they would not use Organic's own marks and product identity to exclude Organic from the U.S. market while withholding payment.

132. Defendants' representations were material. Organic relied on them in issuing extraordinary credits totaling **$1,128,289.04** and in refraining from immediately pursuing legal remedies.

133. On information and belief, Defendants knew the representations were false when made, made them recklessly without knowledge of their truth, or made them with no intent to perform.

134. Defendants intended that Organic rely on the representations.

135. Organic actually and justifiably relied on the representations and suffered injury, including unpaid balances, lost use of funds, loss of market access, legal expenses, and other damages.

136. Organic seeks actual damages, benefit-of-the-bargain damages, out-of-pocket damages, rescission, exemplary damages where permitted, prejudgment interest, post-judgment interest, costs, and all other relief allowed by law.

## Count 7 — Trademark Cancellation and Declaratory Relief Under 15 U.S.C. § 1119 and 15 U.S.C. § 1064

137. Plaintiff incorporates by reference all preceding paragraphs.

138. This action involves federally registered marks, including Reflow's U.S. Trademark Registration No. **7,148,442** for **AQUA-ORG PLUS** and U.S. Trademark Registration No. **7,730,323** for **AQUA-ORG**.

139. Organic has superior rights in the **AQUA-ORG** and **AQUA-ORG PLUS** marks because Organic developed, manufactured, labeled, supplied, and regulated the products under those marks before Defendants' registrations and because Defendants acted only as Organic's customer/distributor.

140. Defendants were not authorized to register Organic's marks in their own name.

141. On information and belief, Defendants' applications contained false or misleading statements concerning ownership, right to register, and/or first use, and Defendants knew or should have known that Organic owned or held superior rights in the marks.

142. On information and belief, Defendants procured or maintained the challenged registrations fraudulently, in bad faith, and/or without a bona fide entitlement to register the marks.

143. Fraud in procuring a trademark registration occurs when an applicant knowingly makes a false, material representation with intent to deceive the USPTO. See *In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009).

144. Under 15 U.S.C. § 1119, this Court may determine the right to registration and order cancellation of registrations in an action involving a registered mark.

145. Organic seeks a declaration that Defendants are not the lawful owners of the **AQUA-ORG** and **AQUA-ORG PLUS** marks as against Organic, that Defendants' registrations are invalid or voidable, and that Organic has superior rights.

146. Organic seeks an order directing the USPTO to cancel U.S. Trademark Registration Nos. **7,148,442** and **7,730,323**, or alternatively to correct ownership and registration rights as the Court deems just.

## Count 8 — False Designation of Origin and Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125(a)

147. Plaintiff incorporates by reference all preceding paragraphs.

148. Organic owns protectable common-law rights in the **AQUA-ORG** and **AQUA-ORG PLUS** marks, names, labels, product identity, and trade dress.

149. Defendants used **AQUA-ORG**, **AQUA-ORG PLUS**, or confusingly similar designations in commerce in connection with goods and commercial activities.

150. Defendants' use, registration, enforcement, repackaging, resale, and representations concerning the marks are likely to cause confusion, mistake, or deception as to affiliation, connection, association, origin, sponsorship, approval, or control of the goods.

151. Defendants' conduct falsely suggests that Defendants, rather than Organic, own, control, manufacture, originate, sponsor, or approve the **AQUA-ORG** and **AQUA-ORG PLUS** products and brand.

152. Defendants' conduct damaged Organic by blocking U.S. market access, interfering with customers, diverting goodwill, causing confusion, forcing Organic to incur legal fees, and preventing Organic from exercising control over its own brand.

153. Organic seeks injunctive relief, corrective relief, cancellation, damages, disgorgement of Defendants' profits, enhanced damages where allowed, attorneys' fees in an exceptional case, costs, and all other relief available under the Lanham Act, including 15 U.S.C. §§ 1116, 1117, 1119, and 1125(a).

## Count 9 — Common-Law Trademark Infringement and Unfair Competition

154. Plaintiff incorporates by reference all preceding paragraphs.

155. Organic owns common-law rights in the **AQUA-ORG** and **AQUA-ORG PLUS** marks, product identity, labels, packaging, goodwill, and trade dress.

156. Defendants used those marks and related brand elements without authorization and in a manner likely to cause confusion.

157. Defendants' conduct constitutes common-law trademark infringement, passing off, misappropriation, and unfair competition under Texas common law.

158. Organic seeks injunctive relief, damages, disgorgement, cancellation-related relief, costs, and all other remedies allowed by law and equity.

## Count 10 — Tortious Interference With Prospective Business Relations

159. Plaintiff incorporates by reference all preceding paragraphs.

160. Organic had a reasonable probability of entering into business relationships with Samca and other U.S. customers or distributors.

161. Defendants knew of Organic's prospective relationship with Samca and intentionally interfered by sending the August 12, 2025 cease-and-desist letter and by threatening Samca with trademark claims based on registrations Defendants obtained without Organic's authorization.

162. Defendants' interference was independently tortious or unlawful because it involved false or misleading assertions of ownership, misuse of improperly obtained trademark registrations, unfair competition, false designation of origin, and interference with Organic's ability to sell its own products.

163. Defendants' conduct proximately caused Samca and/or other prospective customers to cease or avoid doing business with Organic.

164. Organic suffered actual damages, including lost sales, lost profits, lost market access, loss of goodwill, and related expenses.

165. Organic seeks actual damages, lost profits, exemplary damages where permitted, injunctive relief, costs, and all other relief allowed by law.

### Count 11 — Business Disparagement / Injurious Falsehood

166. Plaintiff incorporates by reference all preceding paragraphs.

167. Defendants published statements to Samca and potentially others asserting that Organic-supplied **AQUA-ORG PLUS** goods were unauthorized or infringing and that Samca's importation, distribution, and sale of the goods violated Defendants' alleged exclusive trademark rights.

168. Those statements were false or misleading because Organic is the manufacturer and source of the goods, PyRock was not Organic's exclusive distributor, and Defendants did not have lawful authority to prevent Organic from selling its own goods to other U.S. customers.

169. Defendants published the statements with malice or without privilege, knowing they were false or acting with reckless disregard of their truth.

170. The statements caused special damages, including loss of prospective sales and business opportunities with Samca and others.

171. Organic seeks actual damages, special damages, exemplary damages where allowed, injunctive relief, costs, and other relief.

### Count 12 — Declaratory Judgment

172. Plaintiff incorporates by reference all preceding paragraphs.

173. An actual and justiciable controversy exists between Organic and Defendants concerning the parties' rights and obligations, including whether PyRock owes Organic unpaid amounts, whether the June 2024 credits are rescinded, whether Defendants lawfully own or may enforce the **AQUA-ORG** and **AQUA-ORG PLUS** registrations, whether Organic may sell its own products in the United States, and whether Defendants may interfere with Organic's third-party relationships.

174. Under 28 U.S.C. §§ 2201 and 2202, Organic seeks declarations that:

(a) PyRock accepted Organic's goods and is obligated to pay for them;

(b) the June 2024 credits are rescinded, withdrawn, and unenforceable due to failure of consideration and material breach;

(c) Organic has superior rights in **AQUA-ORG** and **AQUA-ORG PLUS** as against Defendants;

(d) Defendants are not authorized to use the challenged registrations to block Organic from selling its own goods in the United States;

(e) Defendants' threatened enforcement against Organic's customers is unlawful; and

(f) U.S. Trademark Registration Nos. **7,148,442** and **7,730,323** should be cancelled or otherwise corrected.

### Count 13 — Texas Deceptive Trade Practices Act, in the Alternative

175. Plaintiff incorporates by reference all preceding paragraphs.

176. To the extent Organic qualifies as a "consumer" under Tex. Bus. & Com. Code § 17.45, Organic pleads in the alternative that Defendants engaged in false, misleading, or deceptive acts or practices under Tex. Bus. & Com. Code § 17.46, including

misrepresenting the source, sponsorship, approval, affiliation, characteristics, rights, and legal status of goods and marks.

177. Organic recognizes that DTPA consumer status and statutory exemptions may be contested in a business-to-business dispute, including under Tex. Bus. & Com. Code § 17.49. Organic pleads this claim in the alternative pending discovery regarding the parties' purchase, lease, or acquisition of goods or services and any applicable statutory limitations.

178. Defendants' conduct was a producing cause of Organic's damages.

179. Organic seeks economic damages, additional damages where allowed, attorneys' fees where allowed, costs, and all other relief available under the DTPA if Organic establishes statutory consumer status and no exemption applies.

## IX. DAMAGES

180. Organic seeks all damages recoverable by law and equity, including:

(a) principal contract damages of at least **$1,777,194.99**, after rescission of the conditional credits and application of PyRock's **$1,000,000** payment;

(b) alternatively, at minimum, the remaining unpaid balance of **$648,905.95** if the Court does not rescind the conditional credits;

(c) prejudgment interest, including interest accruing from **August 1, 2024**, or another date determined by the Court;

(d) post-judgment interest under 28 U.S.C. § 1961;

(e) incidental and consequential damages arising from nonpayment, delayed payment, and Defendants' interference with Organic's market access;

(f) lost profits and lost business opportunities, including losses arising from Defendants' interference with Samca and other U.S. customers;

(g) disgorgement of Defendants' profits attributable to unauthorized use of Organic's marks, false designation of origin, unfair competition, and wrongful commercialization of Organic's products;

(h) restitution and unjust-enrichment damages;

(i) exemplary or punitive damages where permitted by Texas law;

(j) attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001, the Lanham Act, the DTPA if applicable, and any other applicable law;

(k) costs of court; and

(l) all other damages, equitable relief, and statutory relief proved at trial.

## X. INJUNCTIVE RELIEF AND EQUITABLE RELIEF

181. Organic seeks temporary, preliminary, and permanent injunctive relief prohibiting Defendants and their officers, agents, servants, employees, attorneys, and all persons acting in concert with them from:

(a) asserting ownership of **AQUA-ORG** or **AQUA-ORG PLUS** as against Organic;

(b) using U.S. Trademark Registration Nos. **7,148,442** or **7,730,323** to block Organic from selling its own goods in the United States;

(c) threatening Organic's actual or prospective customers based on Defendants' challenged registrations;

(d) falsely representing that Organic's goods are unauthorized, infringing, counterfeit, or not genuine;

(e) using Organic's marks, labels, packaging, or trade dress in a manner likely to cause confusion unless authorized by Organic or ordered by the Court;

(f) repackaging, relabeling, or selling products under Organic's marks without required authorization, regulatory compliance, and accurate source identification; and

(g) destroying, concealing, or failing to preserve documents and electronically stored information relating to the claims.

182. Organic also seeks an accounting of all goods received from Organic, all goods repackaged or resold, all substitute goods sold under **AQUA-ORG** or **AQUA-ORG PLUS**, all customers, all sales channels, all revenues, all costs, all profits, all inventory on hand, and all communications with third parties concerning Organic or the marks.

183. Organic seeks cancellation or correction of U.S. Trademark Registration Nos. **7,148,442** and **7,730,323** and any other equitable relief necessary to restore Organic's brand rights and prevent further market blocking.

## XI. CONDITIONS PRECEDENT

184. All conditions precedent to Organic's claims for relief have been performed, have occurred, have been satisfied, or have been waived, excused, repudiated, or prevented by Defendants.

## XII. STATUTE OF LIMITATIONS

185. Organic's claims are timely. Defendants' payment breach occurred no earlier than the July 31, 2024 missed payment deadline and continued thereafter. This action is filed within four years of accrual of the contract, debt, fraud, trademark/unfair-competition, and tort claims alleged, and within any applicable federal equitable timeliness framework.

186. To the extent Defendants contend any claim accrued earlier, limitations were tolled, delayed, or affected by Defendants' promises to pay, acknowledgments of the debt, partial payment, fraudulent concealment, continuing misconduct, continuing trademark enforcement, continuing interference, and Organic's delayed discovery of Defendants' unauthorized brand capture and third-party interference.

187. Organic does not rely on the TTAB cancellation proceedings to toll any judicial limitations period. Organic pleads that its court claims are independently timely.

## XIII. ATTORNEY'S FEES

188. Organic seeks recovery of reasonable and necessary attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001 for its contract claims; under the Lanham Act, including 15 U.S.C. § 1117(a), for exceptional-case trademark relief; under the DTPA if applicable; and under any other applicable statute, contract, or equitable doctrine.

## XIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff **Organic Industries Pvt. Ltd.** respectfully requests that the Court enter judgment in its favor and against Defendants **Reflow Supply Chain Solutions LLC d/b/a PyRock Chemical** and **Matthew Murdoch**, jointly and severally where permitted, and award the following relief:

    a. Actual damages in an amount to be determined at trial, including principal damages of at least **$1,777,194.99**, or alternatively at least **$648,905.95** if rescission of credits is not granted;

    b. Rescission and withdrawal of the **$1,102,054.04** price-reduction credit and the **$26,235.00** repacking-materials credit;

    c. Judgment for the price of goods accepted under the Texas UCC;

d.  Restitution and disgorgement of unjust benefits and profits;

e.  Lost profits, lost business opportunities, consequential damages, incidental damages, and special damages;

f.  Exemplary or punitive damages where permitted by law;

g.  Prejudgment interest and post-judgment interest;

h.  An accounting of Defendants' inventory, sales, customers, revenues, costs, profits, repackaging, substitutions, and communications concerning Organic and the **AQUA-ORG** and **AQUA-ORG PLUS** marks;

i.  A declaration that Organic has superior rights in **AQUA-ORG** and **AQUA-ORG PLUS** as against Defendants;

j.  Cancellation or correction of U.S. Trademark Registration Nos. **7,148,442** and **7,730,323** under 15 U.S.C. § 1119;

k.  Temporary, preliminary, and permanent injunctive relief as requested above;

l.  Reasonable and necessary attorneys' fees;

m.  Costs of court and taxable expenses; and

n.  All other relief, at law or in equity, to which Organic is justly entitled.

## XV. JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

## XVI. RESPECTFULLY SUBMITTED

By*: /s/Melissa Rueschhoff*
Melissa Rueschhoff, Esq.
Texas State Bar No. 24007467
**Signature Law Partners, PLLC**
934 Hartinger St.
Colorado Springs, CO 80916
Tel: 808.825-4747
Email: mrueschhoff@siglawpartners.com
*Attorney for Plaintiffs*